**Penny v. Board of Supervisors of
Warrington Township (No. 2)**

*William R. Cooper,* for plaintiffs.

*Stephen B. Harris,* for defendants.

SATTERTHWAITE, P. J., February 8, 1972.— This decision is a sequel to that filed September 3, 1971, in these same proceedings, reported in 53 D. & C. 2d 329, 21 Bucks Co. L. Rep. 322 (1971). Final disposition, after hearing, is now made of complainants' attack under section 702, Cl. XLI, of the Second Class Township Code, as amended, 53 PS §65741, against the legality of the supervisors' resolution of December 22, 1970, adopting a comprehensive plan for the township under section 302 of the Pennsylvania Municipalities Planning Code of July 31, 1968, (no. 247), 53 PS §10302. For the reasons and precedents discussed in the cited opinion, the questions herein considered are limited to those relating to the procedural propriety of the actual enactment process with respect to that resolution. No problems of the substantive construction, application or validity of the comprehensive plan itself can be or are reached herein.

The complaint and amended complaint both give indication of uncertainty, at least in the minds of complainants, as to exactly what documents were actually approved and adopted as the township's com-

prehensive plan by the challenged resolution. Such doubt, if it ever did, in fact, exist, has been resolved and obviated by the introduction into the hearing record of Exhibit R-1. This document on its face, as well as by the testimony of both the township secretary and one of the township supervisors, was "the document consisting of text and maps entitled *A Comprehensive Plan for Future Development in Warrington Township* and dated November 1970," which was the description of the plan as referred to and adopted by the unanimously enacted subject resolution at the supervisors' meeting on December 22, 1970. The court hereby specifically finds that Exhibit R-1, so entitled and additionally endorsed in hand-printing "Official Copy-Do Not Remove," together with the map included in the pocket thereto attached entitled "Comprehensive *Master* Plan" and likewise additionally endorsed in hand-printing "Official Copy," in fact constituted the township's comprehensive plan so referred to in the resolution of December 22, 1970. Any other maps mentioned or received in evidence in the within proceedings were not the final map included in the comprehensive plan actually approved by the supervisors.

This factual determination permits the summary disposition of certain of complainants' contentions without further discussion. Thus, it may well be that there had been "more than one draft of the comprehensive plan and various maps printed." Yet, the allegations of paragraph 7 of the amended complaint that it was impossible to determine which of the maps was the map to which the resolution referred, and [inconsistently] that the resolution "did not refer to maps, charts, textural [sic] and other material intended to form the whole or part of the Plan," are totally unfounded and unsubstantiated by the credible

evidence. So, too, it may also be correct, as alleged in paragraph 8 of the amended complaint, that the final form of the map, with its inked-in notations of the relevant zoning classifications of contiguous territory in adjoining municipalities, was not "available" on December 8, 1970, at the public hearing held by the supervisors, in the sense that such notations did not appear upon the copies of the plan previously circulated by mail throughout the township by the planning commission, and, further, that minor revisions had theretofore been made on the map itself. Nevertheless, it is not true under the weight of the evidence that the copies of the map (Exhibit A-4), which had been posted at the front of the hall and which the supervisors had on the table before them at either the "enactment" meeting of December 22, 1970, or the earlier "hearing" meeting of December 8, 1970, differed in any manner whatsoever from that ultimately adopted as part of Exhibit R-1 aforesaid, except in the one respect that Exhibit A-4 did not bear the inked-in notations of such adjacent zoning, whereas the final Exhibit R-1 copy did.

The evidence does not bear out complainants' further contentions of paragraph 4(a) of the amended complaint that the plan did not include "a map or statement indicating the relationship of the municipality [Warrington Township] and its proposed development to adjacent municipalities and areas" as required by section 301(5) of the Pennsylvania Municipalities Planning Code, or of paragraph 4(b) of the amended complaint that no "effective" public hearing had been held because of the overcrowded condition of the supervisors' meeting room on the occasion of the meeting of December 8, 1970, or of paragraph 9 thereof that the subject resolution had been adopted "hurriedly and without giving full and proper

study and direct attention to the complaints . . . [against] . . . the adoption of such plan, or proper review of it by the supervisors."

The first of these objections would seem to go to the substantive adequacy and validity of the plan itself and, hence, was not a proper matter for consideration in this proceeding. Regardless, the fact is that, in addition to numerous references within the text of the plan itself, under the credible testimony the matter of the relationship of the Warrington plan to the existing zoning classifications of abutting land in adjoining municipalities was specifically considered and noted on the copy of the map attached to the plan actually approved by the supervisors, as already hereinabove mentioned. This very subject had been expressly called to the supervisors' attention, not only by the letter of transmittal dated December 4, 1970, from the township planning commission forming part of Exhibit R-1, but also by counsel for complainants himself in the course of his arguments on their behalf at the December 8th hearing.

There is equally no merit to complainants' contention that, because there were standees, and even an undisclosed number of those for whom there was no space inside the supervisors' meeting room, the requirement of a public hearing imposed by section 302 of the Pennsylvania MPC was not satisfied by the meeting of December 8, 1970. This room, located in the township municipal building and furnished and designed as the supervisors' regular place of meeting for township business, seated 77 persons, and an indefinite number of others were permitted to stand around the perimeter and in the doorways. No one, whether he was within or outside the room at the December 8th meeting, was denied the opportunity to be heard in connection with the proposed comprehensive plan if he or she

expressed a desire to be heard. Indeed, the chairman of the meeting, before it finally had adjourned, specifically invited any and all others who wished to speak to the matter to come forward; none did. Under the circumstances, the meeting did constitute an "effective" public hearing. The provision of facilities therefor was not patently unreasonable. Certainly, the practical operation of representative government should not be forestalled by such circumstances of overcrowding, which might just as well have occurred if any vocal group of organized dissenters had so planned whether the supervisors had provided room for 70 or 700 persons, so long, of course, as anyone who wished to be heard was not unreasonably deprived of that privilege.

The final argument of the amended complaint to the effect that the comprehensive plan was adopted hurriedly and without proper deliberation is likewise contrary to the fact. This project had been a matter of discussion and consideration before the township planning commission for a considerable, but undisclosed, period of time prior to December 1970. As previously mentioned, the planning commission in October 1970 had circulated a brochure summarizing its proposed recommendations for the township's comprehensive plan, with a preliminary map illustrating its suggested application. This document had been mailed to many, if not all, of the township's residents. Before submitting its report to the supervisors, the planning commission also had held a public hearing on a date early in November 1970. The supervisors' meeting on the evening of December 8th was held after unchallenged public newspaper advertisement thereof. They listened to all who desired to be heard at that meeting, which lasted for almost three hours. They held an executive session to deliberate upon the matter on December 15th. It was

not until their special meeting of December 22, 1970 (which, incidentally, was not largely attended and was not overcrowded), that the resolution adopting the plan was finally enacted. Complainants' contention of arbitrary and hasty action is completely unfounded.

In their brief filed subsequent to the hearing herein, complainants asserted two additional arguments not mentioned in the amended complaint: (1) That the resolution in question, in addition to adopting the plan proposed by Exhibit R-1, also directed an annual review and report of recommendations as to possible changes therein by the planning commission; and (2) that the plan failed to comply with section 301(3) of the Pennsylvania MPC in that it contained no "plan for movement of people and goods." These belated, make-weight objections are likewise completely unavailing. They are substantive in nature, going to the propriety or sufficiency of the provisions of the plan itself and, hence, for the reasons previously discussed at length in the prior decision of this court, are improperly raised in this type of proceeding. Moreover, they are lacking in merit in any event. Nothing in the Pennsylvania MPC precludes a provision for periodic review of the plan. In fact, such a practice would seem highly desirable, and section 302 expressly authorizes the governing body of a municipality to adopt *and to amend* the plan as a whole, or *in parts*. Moreover, the text of the plan (Exhibit R-1) in fact does contain a whole division (beginning at page 23) devoted to the subject of transportation, highways and related matters, under the heading "Circulation Plan." To assert that this does not comply with section 301(3) of the code is captious.

Careful study of the within record discloses only one respect in which the procedural requirements of section 302 of the Pennsylvania MPC for the compre-

hensive plan may be considered deficient, and that is a readily supplied ministerial detail, the present absence of which quite obviously is too inconsequential to void the entire plan. Section 302, after authorizing and providing for the adoption of the comprehensive plan by the affirmative vote of the governing body, concludes with the clause: ". . . and the action shall be recorded on the adopted plan or part." This has not been done. While the adoption of the resolution was recorded in the supervisors' minute book, no notation thereof has been made on Exhibit R-1, the plan itself. However, since the court is satisfied under the evidence as to the identity of this document as the final and adopted plan, no reason appears why the same might not even now be recorded on another identical copy of Exhibit R-1 and perpetuated among the township's archives. This clerical function of making a physical notation of the action of December 22, 1970, may just as readily be done now as it could have been done on that very date.

### FINAL ORDER

And now, February 8, 1972, for the reasons stated in the foregoing opinion, the prayer of the within complaint is hereby denied and refused, and said complaint is hereby dismissed. Costs to be paid by complainants.